## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| DANNY JOSEPH SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:17-cv-01386-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Danny Joseph Smith, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Smith timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Smith completed the tenth grade, later obtained his GED, and has previously worked as a painter, commercial cleaner, street sweeper, and auction helper. (Tr. at 23, 43, 292). In his application for DIB, Smith claimed he became disabled on

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 15).

January 31, 2013, due to chronic obstructive pulmonary disease ("COPD"), chronic atrial fibrillation, and high blood pressure. (*Id.* at 195). After his claims were denied, Smith requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 215, 222). Following a hearing, the ALJ denied Smith's claims. (*Id.* at 17-25). Smith was 55 years old when the ALJ issued his decision. (*Id.* at 25, 195). After the Appeals Council denied review of the ALJ's decision (*id.* at 9-11), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Smith commenced this action. (Doc. 1).[2]

## II. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show that he was disabled between his alleged initial onset date and his date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*,

---

[2] The Appeals Council granted Smith an extension of time to appeal from the Commissioner's decision. (Tr. at 1). Accordingly, Smith timely commenced this action on August 16, 2017.

405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012). If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Smith last met the insured status requirements of the Social Security Act on September 30, 2013, and has not engaged in substantial gainful activity since his alleged onset date of January 31, 2013. (Tr. at 19).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical

and laboratory diagnostic techniques." *Id.* at § 404.1508. Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see also* 42 U.S.C. § 423(d)(3). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).[3] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments, even though none of his individual impairments alone is disabling. 20 C.F.R. § 404.1523. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at § 404.1512(a) and (c). If the claimant does not have a severe

---

[3] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

impairment or combination of impairments, the Commissioner will determine the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c).

At the second step, the ALJ determined Smith has the following severe impairments: right eye blindness, obesity, COPD, and thyroiditis. (Tr. at 19).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii); *see also id.* at § 404.1525-26. The claimant bears the burden of proving his impairment meets or equals one of the Listings. *Reynolds-Buckley*, 457 Fed. App'x at 863. If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled. 20 C.F.R § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Smith does not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings. (Tr. at 19-20).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e); *see also id.* at § 404.1545. A claimant's RFC is the most he can do despite his impairment. *See id.* at § 404.1545(a)(1). At the fourth step, the Commissioner will compare her assessment of the claimant's RFC with the physical and mental demands of the

claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and (e), 404.1560(b). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). The claimant bears the burden of proving his impairment prevents him from performing his past relevant work. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant is capable of performing his past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3).

Before proceeding to the fourth step, the ALJ determined Smith has the RFC to perform light work with the following limitations: he can only ambulate short distances up to 100 yards per instance on flat, hard surfaces but can frequently use bilateral foot controls; he can occasionally climb ramps and stairs but never climb ladders or scaffolds; he can frequently stoop but only occasionally crouch, kneel, and crawl; he must avoid exposure to hazards such as heights and machinery but is able to avoid ordinary workplace hazards such as boxes on the floor, doors left ajar, and approaching people or vehicles; he must avoid all exposure to unprotected heights; he cannot operate a commercial motor vehicle; he must avoid exposure to concentrated dust, fumes, gases, and other pulmonary irritants; he is limited to routine and repetitive tasks and simple work-related decisions; and in addition to normal workday breaks, he will be off task 5% of an eight-hour workday, non-

consecutively. (Tr. at 20-23). At the fourth step, the ALJ determined Smith is not capable of performing any of his past relevant work. (*Id.* at 23).

If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1). If the claimant is capable of performing other work, the Commissioner will determine the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will determine the claimant is disabled. *Id.*

At the fifth step, considering Smith's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Smith can perform, such as those of a bakery worker, machine tender, and sorter. (Tr. at 23-24). Therefore, the ALJ concluded Smith is not disabled. (*Id.* at 24-25).

## III. <u>Standard of Review</u>

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*,

363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**IV. Discussion**

On appeal, Smith argues (1) the ALJ failed to establish the onset date of his disability, (2) he has an impairment that meets Listing 3.02A, (3) the ALJ failed to make a determination regarding his credibility, (4) the ALJ erroneously relied on his inability to quit smoking as evidence of non-compliance with treatment recommendations, (5) the finding he has the RFC to perform light work is not supported by substantial evidence, and (6) the ALJ failed to apply Grid Rule 201.14.

**A. Onset Date of Disability**

Dr. Anand Iyer provided a medical source opinion after performing a consultative examination of Smith. (Tr. at 448-57). The ALJ found the medical source opinion revealed Smith is unable to perform even sedentary work. (*Id.* at 22). However, the ALJ determined the opinion could not be used to establish disability because the examination on which it was based was performed in January 2016, more than two years after Smith's date last insured, September 30, 2013. (*Id.*).

The ALJ also found the results of spirometry testing show Smith has an impairment that meets Listing 3.02A. (*Id.* at 22-23, 442-47).[4] However, the ALJ similarly determined the testing could not be used to establish disability because it

---

[4] A spirometry test measures how well air is moved into and out of the lungs. 20 C.F.R. Part 404, Subpart P, App. 1, § 3.00E.

was performed in January 2016, more than two years after Smith's date last insured, September 30, 2013. (*Id.* at 23). The ALJ further determined medical records pre-dating Smith's date last insured do not document objective medical findings that show Smith's COPD was severe enough to meeting a listing. (*Id.*).

Smith argues Social Security Ruling ("SSR") 83-20 required the ALJ to obtain the opinion of a medical expert to determine the onset date of the impairments that rendered him unable to perform even sedentary work and the impairment that meets Listing 3.02A. (Doc. 19 at 23-25).

SSR 83-20 requires an ALJ to establish the onset date of disability after determining an individual is disabled, noting that in many cases, the onset date is critical because it may be determinative of whether the individual is entitled to benefits. SSR 83-20.[5] The ruling acknowledges that in some cases an ALJ must infer the onset date from the medical and other evidence describing the history and symptomatology of the disease process. *Id.* The ruling instructs that an ALJ must have a legitimate medical basis to establish the onset date and that an ALJ "should call on the services of a medical advisor when onset date must be inferred." *Id.*

In an emergency message dated October 17, 2016, the Commissioner clarified SSR 83-20 does not require an ALJ to obtain a medical expert's opinion

---

[5] On October 2, 2018, SSR 83-20 was rescinded and replaced by SSR 18-1p and SSR 18-2p. *See* https://www.ssa.gov/OP_Home/rulings/di/01/SSR83-20-di-01.html, *last accessed* March 16, 2019.

regarding onset date when that date must be inferred. *See Santiago v. Berryhill*, 2018 WL 3208076, at *5 (N.D. Ala. June 29, 2018).[6] "Instead, the decision to call on the services of a medical expert when onset must be inferred is always at the ALJ's discretion." *Id.* Moreover, where medical records pre-dating an individual's date last insured do not establish a disabling level of impairment, no inference is required, and an ALJ does not err by declining to consult a medical advisor. *See O'Neal v. Comm'r of Soc. Sec.*, 723 F. App'x 962, 962-63 (11th Cir. 2018); *Santiago*, 2018 WL 3208076, at *5.

Medical records pre-dating September 30, 2013, Smith's date last insured, do not establish Smith suffered from an impairment of disabling severity. On February 8, 2013, Smith presented to Dr. James A. McCain at Roberta O. Watts Medical Center with cold symptoms, including cough, fatigue, nasal congestion, and wheezing that began four weeks prior. (Tr. 409).[7] Smith reported he smoked cigarettes every day. (*Id.*). Dr. McCain diagnosed Smith with acute bronchitis, chronic tobacco use disorder, chronic mixed hyperlipidemia, and chronic elevated

---

[6] The undersigned cites a district court case that quotes the emergency message because the web link to the message is no longer active.

[7] Smith reported to Dr. McCain he had been released from incarceration earlier in the week. (Tr. at 409). During the hearing, Smith confirmed he was released from Staton Correctional Facility on February 4, 2013, after being incarcerated for two years and five months. (*Id.* at 44-45, 50). He testified he has "had a breathing problem for a long time," that medical care at his place of incarceration was inadequate, and that he had difficulty getting Dr. McCain to refer him to a lung specialist, after reporting his breathing problems, or to a thyroid specialist. (*Id.* at 51-52, 55-56, 62). Dr. McCain's records do not document that Smith reported lung or thyroid problems. (*Id.* at 409-23).

blood pressure without hypertension. (*Id.* at 411). Dr. McCain prescribed medication to treat Smith's bronchitis and educated him on smoking cessation. (*Id.* at 411-12).[8] Smith's thyroid and cardiovascular examinations were unremarkable. (*Id.* at 411).

On March 8, 2013, Smith presented to Dr. McCain with left knee pain. (*Id.* at 413). During this examination, Dr. McCain noted Smith was chronically overweight. Smith's lungs were clear, and his thyroid and cardiovascular examinations were unremarkable. (*Id.* at 415). Dr. McCain prescribed medication for Smith's knee pain and placed him on a diet to address his hyperlipidemia. (*Id.*). Because Smith reported he continued to smoke, Dr. McCain again educated him on smoking cessation. (*Id.* at 413, 415).

On April 19, 2013, Smith again presented to Dr. McCain with left knee pain. (*Id.* at 417). Smith reported the pain improved with prescription medication. (*Id.*). Smith's lungs were clear, and his thyroid and cardiovascular examinations were unremarkable. (*Id.* at 418). Because Smith reported he continued to smoke, Dr. McCain again educated him on smoking cessation. (*Id.* at 417-19).

On June 12, 2013, Smith presented to Dr. McCain with complaints of epigastric pain and heartburn. (*Id.* at 420). Dr. McCain's examination of Smith was negative for chronic cough, dyspnea, and chest pain, and Smith's thyroid

---

[8] During this visit, Smith reported he had received a prosthetic eye implant in the late 1970s after being shot in the head. (Tr. at 409).

examination was unremarkable. (*Id.* at 421-22). Because Smith reported he continued to smoke, Dr. McCain again educated him on smoking cessation. (*Id.* at 421, 423).

The administrative record shows Smith did not receive further treatment until March 2015, almost eighteen months after his date last insured, when he was hospitalized with complaints of shortness of breath and heart palpitations. (*Id.* at 390). He reported the symptoms began about one month prior and that he "really felt poorly most recently beginning about a month ago." (*Id.* at 390, 397). The record of Smith's follow-up visit with Dr. McCain in March 2015 notes Smith had diagnoses of atrial fibrillation, shortness of breath, thyroid problems, and COPD and was treating these conditions with a variety of prescription medications, as well as oxygen. (*Id.* at 424).

In sum, Smith saw his treating physician four times between his alleged onset date of disability and his date last insured. Nowhere is a chronic respiratory disorder, heart or thyroid problem, or other condition of disabling severity documented in the records of these visits. Because medical records did not establish Smith suffered from a disabling level of impairment prior to his date last insured, the ALJ was not required to obtain a medical expert's opinion regarding onset date. *See O'Neal*, 723 F. App'x at 962-63 (holding ALJ was permitted to conclude claimant's onset date was on or after date last insured without consulting

13

medical expert where records of doctors' visits near in time to date last insured did not document a disabling impairment); *Santiago*, 2018 WL 3208076, at *5 (holding ALJ did not err by failing to consult medical advisor regarding disability onset date where medical records pre-dating claimant's date last insured did not establish claimant suffered from disabling impairments).

**B. Listing 3.02A**

Smith argues the results of spirometry testing establish he has an impairment that meets Listing 3.02A. (Doc. 19 at 31). Listing 3.02A provides for disability where a claimant has a chronic respiratory disorder and a certain "FEV" based on his age, gender, and height without shoes. 20 C.F.R. Part 404, Subpart P, App. 1, § 3.02A.[9] Although the spirometry testing results may establish Smith has an impairment that meets Listing 3.02A, the testing was not performed until more than two years after Smith's date last insured. (Tr. at 442-47). Therefore, as the ALJ correctly noted, the results cannot be used to establish disability. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (claimant must show he was disabled between alleged initial onset date and date last insured); *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (if claimant becomes disabled after date last insured, claim must be denied despite disability); *Law v. Colvin*, 681 F. App'x 828, 833-34 (11th Cir. 2017) (holding doctor's treatment of

---

[9] "FEV" is the volume of air exhaled in the first second of a forced expiratory maneuver during a spirometry test. 20 C.F.R. Part 404, Subpart P, App. 1, § 3.00E.

claimant eighteen months after date last insured did not establish whether claimant was disabled during relevant period).

## C. Credibility Determination

The ALJ determined Smith's medically determinable impairments could reasonably be expected to cause his alleged symptoms but that Smith's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. at 21). Smith argues the ALJ erroneously applied SSR 16-3p in making this determination, when he should have made a credibility determination under SSR 96-7p. (Doc. 19 at 25-27).

When a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms, an ALJ must first consider whether the claimant has an underlying medical impairment that could reasonably be expected to produce the claimant's symptoms. *See Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 581548, at *2 (11th Cir. 2019) (quoting *Dyer*, 395 F.3d at 1210); 20 C.F.R. § 404.1529; SSR 16-3p. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the claimant's ability to do basic work activities. *See Taylor*, 2019 WL 581548, at *2 (quoting *Dyer*, 395 F.3d at 1210); 20 C.F.R. § 404.1529; SSR 16-3p.

Under SSR 96-7p, to the extent the claimant's statements about the intensity, persistence, and limiting effects of his symptoms were not substantiated by objective medical evidence, the ALJ was required to determine the claimant's "credibility." SSR 96-7p. The SSA decided to eliminate the term "credibility" from the sub-regulatory policy to make clear that a "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p. Accordingly, SSR 16-3p rescinded and replaced SSR 96-7p, effective March 28, 2016. SSR 96-7p; SSR 16-3p.

While Smith summarily claims SSR 16-3p is effective for disability claims filed on or after March 28, 2016, it is clear the ruling is effective for disability determinations made on or after that date. *See Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 704 (11th Cir. 2018) (noting the version of SSR16-3p republished in October 2017 clarified SSA's adjudicators would apply SSR 16-3p to all determinations made on or after March 28, 2016, and that SSA expected federal courts to use version of rule in effect at time SSA issued decision under review). The ALJ issued his decision determining Smith was not disabled on June 24, 2016. (Tr. at 25). Therefore, SSR 16-3p applied to the ALJ's decision.

Under SSR 16-3p, an ALJ evaluates the intensity, persistence, and limiting effects of a claimant's symptoms based on all of the evidence in the administrative

record. SSR 16-3p. With respect to a claimant's statements about the intensity, persistence, and limiting effects of his symptoms, an ALJ evaluates whether the statements are "consistent with objective medical evidence and the other evidence." *Id.* An ALJ may not assess a claimant's "overall character or truthfulness" in evaluating the claimant's symptoms. *Id.*; *see also Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1307-08 (11th Cir. 2018) (discussing rescission of SSR 96-7p by SSR 16-3p). An ALJ is permitted to discredit a claimant's subjective testimony of pain or other symptoms if he "clearly 'articulate[s] explicit and adequate reasons'" for doing so. *Dyer*, 395 F.3d at 1210 (*Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).

Here, the ALJ articulated a number of reasons for discrediting Smith's statements regarding the intensity, persistence, and limiting effects of his symptoms. The ALJ noted Smith's alleged disability onset date is not corroborated by contemporaneous medical records and appears to coincide with the date he was released from jail. (Tr. at 23). Relatedly, the ALJ noted medical records pre-dating Smith's date last insured do not document objective medical findings that would show Smith is incapable of performing light work with certain restrictions. (*Id.*). As discussed above, medical records pre-dating Smith's date last insured do not show an impairment of disabling severity. The ALJ further noted that given Smith's allegations of disabling symptoms, it would be reasonable to expect an

indication of restrictions placed on Smith in the medical records but that no such indication can be found. (*Id.*). Review of the chronologically relevant medical records confirms the accuracy of this finding.

In sum, the ALJ clearly articulated his reasons for discrediting Smith's testimony of his symptoms, and that determination is supported by substantial evidence.

### D. Inability to Quit Smoking

Smith argues the ALJ improperly based the denial of benefits on his finding Smith has not complied with recommendations to stop smoking. (Tr. at 27-29). To support this argument, Smith cites *Grier v. Colvin*, 117 F. Supp. 3d 1335 (N.D. Ala. 2015). In that case, this district court acknowledged an ALJ may deny benefits based on a claimant's failure to comply with recommended medical treatment without good reason. *Id.* at 1346 (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990)). However, the court held a claimant's failure to carry out an instruction to stop smoking does not necessarily constitute evidence of non-compliance because the addictive nature of nicotine impacts a smoker's ability to achieve smoking cessation. *Id.* at 1346-48 (citing *Seals v. Barnhart*, 308 F. Supp. 2d 1241 (N.D. Ala. 2004); *Shramek v. Apfel*, 226 F.3d 809 (7th Cir. 2000)); *but see Pendley v. Colvin*, 2017 WL 476556, at *6 (N.D. Ala. Feb. 6, 2017) (holding that while claimant's non-compliance with recommendation to stop smoking is not

sufficient to discredit testimony regarding symptoms given addictive nature of smoking, it is relevant to weight afforded that testimony and an appropriate and reasonable consideration for the ALJ); *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 669 (11th Cir. 2015) (holding ALJ adequately explained determination claimant's subjective testimony was not fully credible, where *inter alia*, ALJ determined claimant continued to smoke despite repeated warnings and substantial evidence supported that determination).

Although Smith argues the ALJ based the denial of benefits on his finding Smith has not complied with recommendations to stop smoking, the record makes clear this finding was one of multiple reasons why the ALJ determined Smith's testimony regarding his symptoms was not entirely consistent with the evidence. (*See* Tr. at 21-23). As discussed above, the ALJ's determination is supported by substantial evidence independent of the finding Smith has not complied with recommendations to stop smoking. Therefore, even if the ALJ improperly found Smith has been non-compliant with recommendations to stop smoking, it constitutes harmless error. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) ("When [] an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."); *Wilson v. Comm'r of Soc. Sec.*, 500 F. App'x 857, 859-60 (11th Cir. 2012) (holding any error in relying on mistake of

fact in determining claimant's credibility was harmless because that determination was supported by sufficient evidence independent of mistake of fact).

## E. RFC to Perform Light Work

Smith argues the ALJ's finding he has the RFC to perform light work is not supported by substantial evidence and violates SSR 96-8p. (Doc. 19 at 31-34). An ALJ determines a claimant's RFC based on all relevant medical and other evidence in the record. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 764 (11th Cir. 2014); 20 C.F.R. §§ 404.1520(e), 404.1545. SSR 96-8p provides that:

> [t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
>
> . . .
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.
>
> . . .
>
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion

from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p.

Here, the ALJ stated he carefully considered the entire record in determining Smith has the RFC to perform light work with certain limitations. (Tr. at 20). In support of the determination, the ALJ cited medical records for the relevant period, discussed above, together with Smith's testimony that in 2013 he worked in his garden, cut the grass with a riding lawnmower, performed odd jobs such as painting two or three days at a time, and helped around the house. (*Id.* at 20-23, 57-59). The medical records and testimony constitute substantial evidence supporting the ALJ's determination Smith has the RFC to perform light work with certain limitations. Moreover, the ALJ complied with SSR 96-8p in making the determination because his decision included the narrative discussion and assessment called for by the ruling. *See Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) ("Following [SSR 96-8p's] rubric, the ALJ fully discussed and evaluated the medical evidence, [the claimant's] testimony, and the effect each impairment has on [the claimant's] daily activities.").

### F. Grid Rule 201.14

Smith argues the ALJ should have applied Grid Rule 201.14. (Doc. 19 at 29-30). The "Grids," also known as the Medical-Vocational Guidelines, are found at 20 C.F.R. Part 404, Subpart P, App. 2. An ALJ may use them to determine at

the fifth step whether other work exists in substantial numbers in the national economy that a claimant is capable of performing. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

> The [G]rids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

*Id.* at 1240. Grid Rule 201.14 directs a finding of disability where a claimant is closely approaching advanced age (i.e., 50-54 years old), has at least a high school education and skilled or semi-skilled work experience that is not transferrable, and is limited to sedentary work. 20 C.F.R. Part 404, Subpart P, App. 2, § 201.14.

Here, the ALJ determined Smith has the RFC to perform light work with certain limitations. (Tr. at 20-23). As discussed, this determination is supported by substantial evidence. Therefore, Grid Rule 201.14 does not apply to Smith.

## V.    <u>Conclusion</u>

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law.  Therefore, that decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 20th day of March, 2019.

*Staci G. Cornelius*
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE